**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

SHIFT4 CORPORATION, a Nevada Corporation,

Plaintiff,

v.

PROTEGRITY CORPORATION, a Cayman Islands Company,

Defendants.

Case No. 2:13-cv-01960-APG-CWH

**ORDER GRANTING MOTION TO TRANSFER VENUE**

**(Dkt. ##13, 15)**

Defendant Protegrity Corporation sent Plaintiff Shift4 Corporation a demand letter suggesting Shift4 might be infringing two of Protegrity's patents: U.S. Patent Nos. 6,321,201 and 8,402,281.[1] In response, Shift4 filed this lawsuit seeking a declaration of non-infringement. Protegrity now moves to dismiss Shift4's case, or in the alternative, to transfer venue to Connecticut under 28 U.S.C. § 1404(a).[2]

While Shift4 argues it should not be forced to litigate in Connecticut, the factors I must consider favor transfer. In particular, the Connecticut court's past and current experience with the Patents-in-Suit and Protegrity's technology will aid both with judicial efficiency and efficiency for the parties. Since 2008, the District of Connecticut has managed numerous patent cases addressing the same or similar patents as those at issue here. Several actions involving Protegrity and the Patents-in-Suit are pending in the District of Connecticut. Protegrity has filed a parallel action in the District of Connecticut claiming patent infringement against Shift4.[3] After carefully considering each of the venue-transfer factors, I find transfer to the United States District Court

---

[1] [Dkt. #1, Exhs. 1, 2.]

[2] [Dkt. ##13, 15.]

[3] *Protegrity Corp. v. Ciphercloud, Inc.*, Case No. No. 3:13-cv-01802 (D. Ct.).

for the District of Connecticut appropriate. Because I am transferring this action, Protegrity's motion to dismiss is moot, so I deny that motion without prejudice.

## I. LEGAL STANDARD

Courts in the Ninth Circuit consider the following factors when deciding whether to transfer an action to another federal court under 28 U.S.C. § 1404(a):

(a) the location where the relevant agreements were negotiated and executed;[4]

(b) the state that is most familiar with the governing law;

(c) the plaintiff's choice of forum;

(d) the parties' respective contacts with the forum;

(e) the contacts relating to the plaintiff's cause of action in the chosen forum;

(f) the differences in costs of litigation in the two forums;

(g) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and

(h) the ease of access to sources of proof.[5]

In addition, "[t]he feasibility of consolidation is a significant factor in a transfer decision … although even the pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties."[6]

## II. ANALYSIS

### a. Familiarity With Governing Law

The second Jones factor considers which forum is most familiar with the governing law. Federal courts are generally familiar with disputes arising under federal law,[7] but I cannot ignore

---

[4] I do not consider this factor because this case does not involve any contract, and it is not addressed by either party.

[5] *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)

[6] *A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. Of Cal.*, 503 F.2d 384, 389 (9th Cir. 1982).

[7] *Duramed Pharm., Inc. v. Watson Labs., Inc.*, 308-CV-00116-LRH-RAM, 2008 WL 5232908 (D. Nev. Dec. 12, 2008).

the District of Connecticut's extensive experience with the patents and technology at issue in this case. As noted in *In re Zimmer Holdings, Inc.*,[8] where cases dealing with the same patent are in the infancy of litigation, and there is little indication discovery, evidence, or proceedings will overlap, the mere existence of pending cases addressing the same patents may not strongly favor transfer.[9] But here the District of Connecticut's experience with these patents is far from in its infancy, and there is substantial likelihood of overlap in discovery, evidence, and proceedings between the pending actions. The District of Connecticut has been handling cases involving these patents since 2008.[10] That court has engaged a technical advisor to assist it in analyzing highly-technical issues raised by these data-security patents.[11] The District of Connecticut has conducted a Markman hearing construing at least one of the Patents-in-Suit.[12] The District of Connecticut is currently handling several cases involving these same patents.[13] While I agree with Shift4 that a court's familiarity with certain patents does not on its own warrant transfer,[14] in a highly-technical patent case such as this, the District of Connecticut's expertise with the Patents-in-Suit, the existence of pending cases involving the same patents, and the parallel action between Shift4 and Protegrity all strongly support transfer.

////

---

[8] 609 F.3d 1378, 1382 (Fed. Cir. 2010),

[9] *In re Vistaprint Ltd.*, 628 F.3d 1342 at 1342-48.

[10] *Protegrity Corp. v. Ingrian Networks, Inc.*, Case No. 3:08-cv-618 (D.Ct.),

[11] [Dkt #15 at 13]

[12] *Id.*

[13] *Protegrity Corp. v. Ciphercloud, Inc.*, Case No. 3:13-cv-1317 (D. Ct.); *Protegrity Corp. v. PerspecSys USA*, Inc., Case No. 3:13-cv-1383 (D. Ct.); *Protegrity Corp. v. Prime Factors, Inc.*, Case No. 3:13-cv-1384 (D. Ct.); *Protegrity Corp. v. Phoenix Payment Systems, Inc.,* Case No. 3:13-cv-1386 (D. Ct.); *Protegrity Corp. v. Trustwave Holdings, Inc.,* Case No. 3:13-cv-1409 (D. Ct); *Protegrity Corp. v. Informatica Corp*., Case No. 3:13-cv-1410 (D. Ct.); *Protegrity Corp. v. AJB Software Design, Inc*., Case No. 3:13-cv-1484 (D. Ct.); *Protegrity Corp. v. Paymetric, Inc.*, Case No. 3:13-cv-1549 (D. Ct.); *Protegrity Corp. v. TokenEx, LLC*, Case No. 3:13-cv-1719 (D. Ct.); *Protegrity Corp. v. Epicor Software Corp.,* Case No. 3:13-cv-1781 (D. Ct.).

[14] *In re Vistaprint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010).

**b. Plaintiff's Choice of Forum**

The third *Jones* factor considers the plaintiff's choice of forum.[15] Courts generally give deference to a plaintiff's choice.[16] But this deference may be diminished where a plaintiff is merely anticipatorily filing a declaratory judgment action.[17] Shift4 filed the instant action in response to Protegrity's efforts to conduct pre-litigation settlement discussions.[18] I find this factor only slightly disfavors transfer.

**c. The Parties' Contacts With the Forum**

The fourth *Jones* factor considers the parties' contacts with the forum. Shift4 has extensive connections with Nevada: it is a Nevada company and designs and makes its products in Nevada. Protegrity may have some connections to Nevada, but it has provided evidence suggesting its contacts are limited.[19] Protegrity's primary U.S. subsidiary's operations are based in Stamford, Connecticut, as are Protegrity's relevant witnesses and employees.[20] This factor is neutral.

**d. The Contacts Relating to the Plaintiff's Cause of Action in the Forum**

The fifth *Jones* factor considers the contacts relating to Plaintiff's cause of action. I must consider the facts of the case and whether Nevada has a "particular interest in the parties or the subject matter."[21] Nevada undoubtedly has some interest in this case given Shift4 and its relevant operations are in Nevada. But in contrast, this declaratory action

---

[15] *Jones*, 211 F.3d at 498.

[16] *Decker Coal Co. V. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

[17] *Z-Line Designs, Inc. v. Bell'O Intern., LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003); *Am. Realty Investors, Inc. v. Prime Income Asset Mgmt., LLC*, 2013 WL 5947221 (D. Nev. Nov. 4, 2013).

[18] [Dkt #15 at 2.]

[19] [Dkt #15 at 6-7.]

[20] [Dkt #15 at 15.]

[21] *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

does not appear to relate to Protegrity's contacts with Nevada.[22] This factor weighs slightly against transfer.

**e. Differences in the Cost of Litigation in the Two Forums**

The sixth *Jones* factor considers the difference in the costs of litigation between the two forums. I am sensitive to Shift4's argument that its relevant operations and witnesses are in Nevada, and it wishes to avoid the expense of travelling to Connecticut.[23] But all of Protegrity's relevant inventors, experts, and files are in Connecticut where the other related cases are pending. Even if this case remained in Nevada, Shift4 likely would incur travel expenses to take the depositions of Protegrity's witnesses in Connecticut. Additionally, it is likely that litigation costs will be reduced for both parties in the District of Connecticut, where proceedings might be consolidated and the Court will be highly experienced with the patents and technology. This factor slightly favors transfer.

**f. The Availability of Compulsory Process to Compel Attendance of Unwilling Non-party Witnesses**

The seventh *Jones* factor considers the availability of compulsory process to compel attendance of unwilling non-party witnesses. Shift4 argues witness convenience strongly weighs against transfer because its employees and operations are in Nevada.[24] But Shift4 has identified no Nevada-based witnesses save its own employees, and Shift4 may compel its own employees to testify.[25] The named inventors of the subject patents apparently are not residents of either Nevada or Connecticut.[26] Protegrity's operations and related evidence apparently are located in Connecticut.[27] While perhaps not as

---

[22] [Dkt #15 at 15.]

[23] [Dkt #32 at 7-8.]

[24] [Dkt #32 at 7-8.]

[25] *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555 (N.D. Cal. 1988).

[26] [Dkt #15 at 15.]

[27] [Dkt #15 at 7-8.]

important as an infringement-defendant's operations, a patentee's operations can be relevant to damages, enforcement, and other issues. This factor either is neutral or slightly favors transfer.

**g. The Ease of Access to Sources of Proof**

The eighth and final *Jones* factor evaluates which forum has better access to sources of proof. All of Shift4's employees, products, and files are in Nevada.[28] Shift4 correctly points out that, often, the location of infringement-defendant's operations is an important factor in the transfer analysis. But all of Protegrity's relevant witnesses and documents appear to be in Connecticut. Further, any evidence related to the subject patents likely will be located in Connecticut given the pending actions. This factor is neutral.

**h. Balancing of factors**

While some factors are neutral or weigh slightly against transfer, considerations of "[w]ise judicial administration, ... conservation of judicial resources, and comprehensive disposition of litigation" all strongly support transfer.[29] As explained by the Federal Circuit, where "significant overlap and a familiarity with the patents could preserve time and resources . . . judicial economy [may be] served by having the same district court try the cases involving the same patents."[30] The District of Connecticut's experience and ability to potentially consolidate proceedings not only serve judicial efficiency, but also should assist the parties in educating the court and efficiently litigating the case.

Based on the foregoing factors, the District of Connecticut is the proper venue for this matter, so I grant Protegrity's Motion to Transfer Venue.

////

////

---

[28] [Dkt #15 at 8-9.]

[29] *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).

[30] *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).

## III. CONCLUSION

IT IS THEREFORE ORDERED that Protegrity's Motion to Transfer Venue [Dkt. #15] is GRANTED. This case is transferred to the United States District Court for the District of Connecticut.

IT IS FURTHER ORDERED that Protegrity's Motion to Dismiss [Dkt. #13] is DENIED WITHOUT PREJUDICE AS MOOT.

Dated: September 26, 2014.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE